BUCK v. MASON et al.

(Circuit Court of Appeals, Fifth Circuit. February 15, 1905.)

No. 1,417.

1. INTERPLEADER—PROCEDURE—LITIGATION OF ISSUES BETWEEN CLAIMANTS TO ·FUND.

Where, on a bill of interpleader filed by a judgment defendant, by agreement of all the parties, the amount of the judgment was paid into court and the judgment satisfied in full, and an order was entered requiring the judgment plaintiff and the respective claimants to litigate their claims to the fund before the court, and subsequently by further stipulation all except two of those claiming adversely to the judgment plaintiff were paid from the fund, an order made by the court requiring one of the remaining claimants to plead under oath within seven days, and also to give a bond in favor of, the other claimant to pay his costs and expenses and interest on the fund, should he establish his claim, was not

warranted, either by the recognized rules of procedure in such cases or by the agreement by which the court obtained jurisdiction, and was erroneous.

**2. SAME—SUFFICIENCY OF EVIDENCE.**

Evidence considered, and *held* sufficient to sustain the findings of the trial court on issues of fact joined between claimants to a fund paid into court on a bill of interpleader.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

Jno. C. Avery and Edgar H. Farrar, for appellant.

W. A. Blount and A. C. Blount, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is a bill of interpleader, instituted in the Circuit Court by Martin H. Sullivan against the appellant, Samuel H. Buck, and the appellees, Harry B. Mason and W. A. Milliken, and several other parties, whose interests were disposed of during the progress of the cause, by consent. W. A. Milliken recovered in the Circuit Court for the Northern District of Florida a judgment against Martin H. Sullivan for $51,202.25. Milliken's creditors brought suit in both the state and federal courts, and sought, by means of garnishment and otherwise, as stated in bill of interpleader, to arrest the payment of the judgment to Milliken and have it applied to the satisfaction of their demands. The bill of interpleader was filed by consent of all parties, as set forth in an agreement signed by and for them, and which stipulated that the fund in dispute should be paid into the First National Bank of Pensacola, subject to the order of the Circuit Court, and that the contesting claimants should litigate in the interpleader suit in the said court as to their rights. The decree entered in pursuance of the agreement provided that:

"Each and all of the claimants to the said money due upon said judgment should litigate with each other and with the said Milliken and the said Mason as to who was entitled to the said money herein ordered to be deposited in the said bank, and, further, the said Milliken mark on the records of this court the said judgment by him recovered against the said Sullivan satisfied in full; and by consent of all the parties to this suit it is further ordered, adjudged, and decreed that the said Sullivan be, and he is, upon complying with the terms of this decree, forever discharged from all liability for or on the said judgment, and from all liability thereafter to each and all and every of the parties to this suit for or on account of any and all matters involved in any and all of the said suits," etc.

The record shows that all claims against Milliken were paid by consent of all parties, except the claim of Harry B. Mason and the claim of Samuel H. Buck. After deducting these payments there was left the sum of $34,856.34. The claim of Buck being supposed not to exceed $22,000, an order was made ex parte, Milliken not objecting, to pay over $12,856.34 to Mason. Immediately upon the above payments being made, upon motion of Mason, the court made the following order:

"It is ordered that on January 25, 1904, at 11 o'clock a. m., the remainder of the fund deposited in the First National Bank of Pensacola on January 16, 1904, in this cause, said remainder being the sum of twenty-two thousand

135 F.—20

dollars ($22,000), shall be paid over to the said Harry B. Mason, unless S. H. Buck shall before said time make and file in this court a bill of complaint or petition setting forth particularly and definitely the particulars of his claim against the defendant W. A. Milliken and against the said fund, and shall verify the said bill or petition by his oath, and shall make and execute and file in this court a bond, with good and sufficient security, to be approved by the clerk of this court, in the principal sum of $5,000, conditioned to make good to the said Harry B. Mason any loss which he may sustain by reason of the impounding of said sum of $22,000 under order of this court as aforesaid, and the costs and expenses taxable and incurred herein, and to pay to the said Harry B. Mason interest upon the said sum at 8 per cent. per annum for the length of time during which the said sum shall be detained upon deposit aforesaid, because of the pendency of the claim of him, the said S. H. Buck, thereto, in the event that the said Harry B. Mason shall be declared entitled by this court to receive said deposit at the end of the said litigation.

"January 18, 1904." ·

And on the 22d of January counsel for appellant, Buck, moved the court to set aside the order made upon the application of Mason upon the following grounds:

"(1) Because the said order is beyond the jurisdiction of this honorable court.

"(2) Because there is no authority in the law for the making of such order.

"(3) Because the said order is unwarranted by the practice of this honorable court.

"(4) Because the said order in effect deprives the movant of his right in the premises without an opportunity to have the same legally adjudicated.

"(5) Because the same is contrary to the spirit and intention of the agreement and order bond therein entered into between the complainant and the several defendants, including said Mason, by virtue of which the bill of interpleader herein was filed and this action commenced."

Such application appears to have been denied upon the same day as made. The making and enforcing of this order is the ground of the first error assigned on this appeal.

At the time of this order, requiring Buck within seven days to plead under oath and give bond to secure the fund in court and interest thereon, Buck himself was in the city of New York and his counsel in Pensacola, and it is evidence of his belief in the justice of his claim that he complied with the hard conditions, although it resulted in a petition requiring substantial amendment to fit the actual evidence afterwards taken in the case. The order to plead and give bond within such short delay was not only a hardship, but, so far as we are advised, was without precedent in bills of interpleader, and was a distinct enlargement, if not actual violation, of the agreement under which the court obtained jurisdiction of the case and the fund. In view of the fact that Milliken was the prima facie owner of the judgment against Sullivan, and prima facie entitled to receive the money paid thereon, it is easy to see that Buck's position was that of actor, and it was proper to require him to plead according to the equity rules. Beyond this, the order was erroneous.

Martin and Milliken pleaded, but not under oath, taking issue with Buck's bill, and thereupon the court made an order for the taking of testimony, and after testimony was taken Buck desired to amend his petition so as to make it better conform to the case which he claimed had been established by the evidence, and he made application for leave to

file such amended petition. The court, without passing upon the application until after the argument and the consideration of the cause on final hearing, thereafter proceeded to a decree refusing Buck's leave to file his amended petition and adjudging that the $22,000, the fund in court, belonged to Mason, and should be turned over to him, and further adjudged against Buck and his surety on the indemnity bond the costs of the proceeding and the further sum of $782.18, amount of interest at the rate of 8 per cent. per annum upon the said $22,000 from the 18th day of January, 1904, to the date of the decree.

Buck's contention, as set forth in his amended petition, is substantially as follows: In the month of April, A. D. 1900, Milliken assigned to Buck and one C. L. Rathborne a half interest in what he should become entitled to under the terms of the contract between him and Sullivan, in consideration of Buck and the said Rathborne aiding and assisting Milliken in the performance of said contract. Buck thereafter did aid and assist Milliken in such performance, and thereafter, in connection with such performance, Buck, at the request of Milliken, loaned him during the year 1900 $175, to be used by Milliken in the prosecution of a suit by him against Sullivan for the recovery of money owed under the terms of the contract. That Milliken was indebted to Buck and Rathborne in the sum of $12,000, in which Buck had a half interest. That Milliken was permitted to become indebted to Buck and Rathborne in said sum in consideration of Milliken's assignment to Buck and Rathborne, as collateral security for said indebtedness, of one-half of Milliken's interest in his claim against Sullivan. That on the 3d of April, 1900, in consideration of the money loaned by Buck as aforesaid, and of the indebtedness of Milliken to Buck and Rathborne as aforesaid, and of the interest which Buck then owned in Milliken's claim against Sullivan, Milliken agreed with Buck to pay him one-half of such sum as he might obtain from Sullivan. Prior to the time of making the agreement last mentioned between Buck and Milliken, the latter informed Buck that Rathborne had abandoned all claim to any interest, and that therefore Milliken made the interest of Buck one-half instead of one-fourth, as it would otherwise have been. Then the recovery of the judgment is set forth in accordance with the statements in the bill of interpleader, and the petition goes on to allege that, if Mason is entitled to any portion of the judgment, he is not entitled to as much as one-half thereof, and had before the filing of the petition been paid a great deal more than the actual consideration paid by him for the alleged assignment of the judgment, and, further, that, if any assignment was made by Milliken to Mason, it was for the purpose of constituting a collateral security for money advanced to Milliken by George Mason, deceased, upon whose estate Harry B. Mason was administrator, and that, after allowing to the said Harry B. Mason all of the money advanced by his intestate and by him, the said Harry B. Mason, and the legal interest thereon, and after allowing Milliken all of the expenses incurred by him in obtaining judgment against Sullivan, there still remained $22,000, which Buck prayed should be turned over to him.

Mason set forth his claim in an unsworn answer substantially as follows: He states that the allegation that he had knowledge of Buck's claim is false, and that the assignment under which he claims is bona

fide and upon a valuable consideration, in pursuance of a written con-tract between Milliken and Mason's father, George Mason, now deceased, for money loaned by George Mason to Milliken, and for which he holds several promissory notes of Milliken, payable to George Mason, dated at different dates during the years 1900 and 1901, amounting to about $10,000. These notes came to Mason's hands as administrator of his father's estate. After his father's death he continued to assist Milliken financially by lending him such sums of money as he called for, for most of which he took from Milliken promissory notes, amounting to about the sum of $7,000. For the use of the various sums loaned by George Mason, Milliken agreed, by written contract of April 16, 1900, to assign one-third of his commissions owing by Martin H. Sullivan to George Mason. After the reversal of the first judgment against Sullivan by the Circuit Court of Appeals at New Orleans, in January, 1902, it became necessary to begin suit again in the lower court, and Milliken gave Mason a written agreement to assign him an interest of one-half of his recovery against Sullivan, to include the one-third interest due the estate of George Mason, deceased. After recovery of the second judgment against Sullivan, November 29, 1902, Milliken by written assignment, in pursuance of former contracts, as stated in the answer, in consideration of various sums of money loaned him by George Mason and by Harry B. Mason, transferred and assigned the whole judgment to Henry B. Mason, which was accepted in good faith, upon bona fide consideration, and without knowledge or information of Buck's claim. That Harry B. Mason, to aid Milliken in settling up claims brought against him, consented to the sum of $5,000 being paid to Hattie B. Scales and the sum of $1,500 to C. B. Leet out of the money paid in on the Sullivan judgment. The claim of Buck is denied.

Milliken filed an unsworn answer, in which he pronounces false Buck's claim that Milliken has assigned to him, as stated in Buck's petition. He denies that Buck had any connection with the sale of the lands. He denies that $175 advanced by Buck was used by him in the prosecution of his suit against Sullivan. The material part of the answer is that in which Milliken says, referring to the assignment made by him to Harry B. Mason of the judgment against Sullivan, that:

"Said assignment was made in good faith by respondent upon a valuable consideration paid respondent by said Mason and his father, George Mason, now deceased."

It is not necessary, nor would it be profitable, to review in detail the evidence in the bulky record of the issues between the appellant and the appellees. The conflict is direct between Buck and Milliken, and we are unable to reconcile their statements as to facts in regard to matters where it does not seem possible that either, with the interests involved, can be mistaken. Among the letters of the parties and the written papers put in evidence, we find the following acknowledgment in favor of Buck:

"Sam'l H. Buck, Esq., City—Dear Sir: In case I succeed in making any compromise of my claim in Sullivan land matters, I will pay over to you one-half of the amount I settle for. Yours truly,
"[Signed]                                    W. A. Milliken."

As to this Milliken says.

"I agreed with Mr. Buck that, if he would lend me the money I would need to prosecute a suit against Sullivan to collect my commission for the sale of his timber lands, I would give him half of what I recovered. This agreement was verbal, and was made about the 8th or 9th of March, 1900. * * * My only promise to give him an interest in said commission was based upon his promise to furnish me the money to carry on my suit against Sullivan, and this he wholly failed and refused to do. From the time Mr. Buck obtained from me the letter of April 3, 1900, up to this good day, he has never furnished, nor offered to furnish, me one dollar for any purpose. At my last meeting with him, about April 14, 1900, he said he could not then lend me any more money, nor could he furnish me money for my expenses, and he said I would have to make some other moneyed arrangement."

From this on there was correspondence between Buck and Milliken, in which Buck persistently asks for payment of personal loan of $175, and seeks information as to Milliken's progress in collecting claim against Sullivan, and in which Milliken fences and avoids, neither admitting nor denying, Buck's interest. When Buck writes, in letter of September 27, 1900, "Please let me hear from you what you are doing with our claim against Mr. Sullivan," Milliken answers, on September 28, 1900 :

"I have collected nothing on my claim against Sullivan, and do not expect ever to get a penny out of him, except at the end of a long and expensive lawsuit."

January 4, 1901, Buck writes:

"Please advise me what steps you have taken to collect claim against M. H. Sullivan, in which we are jointly interested."

Milliken answers, January 8, 1901:

"I have never received a penny from Sullivan, and never will, if he can possibly beat me out of it. I have sued him for damages, and hope to make him pay me at least for my services and expenses," etc.

In regard to this correspondence Milliken testifies:

"I recognized, from the insidious manner in which Mr. Buck referred to his interest in my claim for commissions in his various letters to me dunning me for the $175 I owed him, that he was endeavoring to secure from me an admission of his claim in some way, which I refused to recognize. I ignored his claim, knowing it had no foundation to rest on, binding in law, equity, or good morals."

On the whole written evidence the preponderance seems in favor of Buck. The real difficulty is in regard to any consideration passing from Buck to support the assignment he claims. It does not appear that he ever rendered any substantial assistance in finding a purchaser for, or aided in disposing of, the Sullivan lands. His firm, Rathborne & Co., did write to an English correspondent, but it came to nothing. The $175 loaned from time to time by Buck to Milliken was always treated by Buck as an independent debt, for which he dunned Milliken persistently and frequently for payment, as though having no reference to the Sullivan claim.

As to the indebtedness of Milliken to Rathborne & Co., growing out of speculations in stocks, which Rathborne swears passed to him—and he is corroborated by the writings—by the settlement of the affairs of that company, Buck had no interest in that; and it is proper to note

in this connection that in October, 1901, Buck endeavored to secure whatever interest Rathborne had in the Sullivan claim as growing out of the affairs of Rathborne & Co., for he proposed an assignment on terms, as shown by documents not disputed, to wit:

"Chas L. Rathborne,
    "Member N. Y. Stock Exchange.
"R. W. Rathborne, Jr. ·

                                        "Telephone, 2102 Cortlandt.
                                        "Cable, 'Glyborne.'
        "Rathborne & Son, Bankers & Brokers, 7 Wall Street.
                                        "New York, Oct. 14, 1901.
"I hereby agree to pay over in kind one-fifth of all I may receive from the claim of W. A. Milliken vs. H. M. Sullivan for commissions on sale of timber lands in Alabama and Florida for General R. A. Alger and his associates.
        "[Signed]                                        S. H. Buck.
"Witness:
    "W. S. Young,
        "30 Broad St., N. Y. City."

"Chas. L. Rathborne.
    "Member N. Y. Stock Exchange.
"R. W. Rathborne, Jr.
    "Member N. Y. Stock Exchange.

                                        "Telephone, 2102 Cortlandt.
                                        "Cable, 'Glyborne.'
        "Rathborne & Son, Bankers & Brokers, 7 Wall Street.
                                        "New York, Oct. 14, 1901.
"For one dollar paid in hand, the receipt of which I hereby acknowledge, and other valuable considerations, I hereby sell and transfer to Samuel H. Buck, of this city, all my rights and title in and to the claim of W. A. Milliken of Washington, D. C., against H. M. Sullivan, of Pensacola, Florida, for commissions, etc., on the sale or transfer of certain timber lands in Alabama and Florida to General R. A. Alger and his associates.
"Given under my hand in New York City, this 14th day of October, 1901.
"Witness:
    "In handwriting of W. S. Young, 30 Broad St."

## March 9, 1904, Buck wrote to Rathborne as follows:

                                        "New York, March 9, 1904.
"Mr. C. L. Rathborne, Mt. Kisco, New York—Dear Sir: I have had several talks with Walter and he has doubtless explained the importance of my proving by you only two points: (1) That Milliken originally, before sale was effected, gave you and myself one-half interest in whatever commissions he collected for the sale of lands belonging to Sullivan lying in Alabama and Florida. (2) That my interest was not included in my assignment to you. This is very important to enable me to complete my case. If you will consent to give this testimony on Friday, about noon, I will be glad to meet you in Walter's office. Please let me know if you will consent to do so.
    "Yours very truly,                                        Sam'l H. Buck."

It is not easy to reconcile these papers, taken in connection with the evidence of Rathborne, with the claim of Buck that he had an interest in Milliken's claim against Sullivan for commissions in selling the Florida lands, because and growing out of the transactions of Milliken with Rathborne & Co. The admissions of Milliken as to Buck's interest in the Sullivan claim, as proved by Mr. Nicoll, lose force, because at that time Rathborne & Co. held as collateral the note of Sullivan conditionally promising to pay commissions. The burden of

proof to establish his claim is properly on Buck. According to the decree of the lower court, he failed to satisfy the trial judge. In our judgment, on the whole evidence, the case is too close for this court, by a majority of judges, to decree that the lower court erred in its finding.

For the reasons herein, the decree of the Circuit Court is amended, by striking out all that part condemning Buck to pay interest, in the third paragraph thereof, and condemning Buck and the Ætna Indemnity Company, his surety, to pay interest and costs, as in the fourth paragraph thereof, and, as amended, the same is affirmed. The appellant to have and recover costs in this court, including costs of transcript.